the goods that passed into the receiver's hands, he could only divest himself of the liability by the consent of these attaching creditors.

It is contended that Cary could not be made chargeable by the attachments, as he held the property of the defendants under an assignment, and that upon the proceeding by garnishee process under the attachments, the validity of the assignment could not be inquired into; that it was the duty of the plaintiffs in the attachments to require the officer to treat the assignment as a nullity and to take the property into custody. It is true that the plaintiffs might have done so after indemnifying the marshal, but the question is, were they bound to do so?

In these cases, affidavits were made according to section 34 of the attachment laws, that Joseph Cary had in his hands property of the defendants, and in pursuance thereof he was summoned. By section 35 of the law, from the day of such service, he stood liable to the plaintiffs in the attachments for the amount of the property and moneys, credits and effects in his hands; and he shall answer under oath all questions put to him touching the property, credits and effects in his possession or within his knowledge. If the garnishee fails to appear and answer, he may be attached and judgment may be rendered against him for the amount of the plaintiff's debt. If it appear from the answer of the garnishee that he was indebted to the defendants, or that he had property in his hands belonging to the defendants at the time he was notified, he shall forthwith deliver such property or pay the amount of his indebtedness to the officer; and in case of his not delivering over the property or paying his indebtedness, the court may enter judgment against him. And if it appear from the answer of the garnishee that he holds the title of any real estate, or any interest therein, in trust for the defendant, or for his benefit, he shall convey the same to the officer, who shall, under the direction of the court, proceed to sell the same in the same manner as a receiver. In case the plaintiff is not satisfied with the answer of the garnishee, the plaintiff may have a trial on the issue formed by such answer. Now, I think from the whole scope of the law, an assignee under a fraudulent assignment may be made a garnishee in attachment. If he confesses in his answer the fraud, or if it is found by a jury, he is in law a trustee of the property in his hands. Under the laws it is immaterial how the property came into his hands, if it is property that is liable to seizure by attachment. When the assignee is satisfied that the assignment is voidable by creditors, he may turn over the property, and he may even convey real estate, to the officer. In the case of Mead v. Purdy [Case No. 9,367], this court has carried out this provision of the law, and proceeded in the sale, and the deed, and in ordering a writ of as-

sistance, the same as if it were a case in equity. It is a law of the state regulating titles, and may be followed in this court.

The attachment law provides for a trial of the issue raised by the answer of the garnishee, and there is no more common issue than the one raised by Joseph Cary in his answer. Such has been the practice of this court, and, I presume, of the courts of the state under the law. The attaching creditors were not bound to have the goods seized in Cary's hands in the first instance, but they may proceed against him as garnishee to test his title, and if successful, to charge him with their value. The attachment, in the first instance, being necessary to prevent the garnishee from disposing of the property, it is proper for the court to proceed in the case to a final determination.

Upon the answer of Joseph Cary, and the proofs submitted, there is no doubt the attachments were issued on legal grounds, and that the alleged fraud is fully established.

Cary was made chargeable to these plaintiffs with the value of the property that passed into the hands of the receiver. If judgments were rendered against Cary for the amount of said property, he would have a right to have the amount realized out of the property by the receiver appropriated to those attachments, he not having possession of the property fraudulently. Upon this consideration, the money paid into court by the receiver will be ordered paid on the two judgments of Bowen and others and Claflin and others; and if there should be a surplus, it will be paid to these complainants.

---

## Case No. 10,978.

### The PEREIRE.

[Affirming Case No. 10,979. Nowhere reported; opinion not now accessible.]

---

## Case No. 10,979.

### The PEREIRE.

[8 Ben. 301.] [1]

District Court, E. D. New York. Dec., 1875. [2]

BILL OF LADING — EXEMPTION FROM DAMAGE BY BREAKAGE—NEGLIGENCE IN DISCHARGE OF CARGO—BURDEN OF PROOF.

Plate glass was brought by a steamship from Havre to New York, under a bill of lading, by which the steamship was exempted from liability for damage by breakage. When the glass arrived at the store of the consignees three of the cases were found to contain broken plates; and a libel was filed to recover the damage, which, it was alleged, was caused by negligence in the manner of discharging the cases: *Held*,

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court; case unreported.]